74 So.2d 506

## JOHNSON v. STATE.
### 6 Div. 674.

Court of Appeals of Alabama.

June 15, 1954.

Rehearing Denied June 29, 1954.

John Ike Griffith, Birmingham, for appellant.

Si Garrett, Atty. Gen., and Arthur Joe Grant, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted of the offense of possessing narcotic drugs in violation of the provisions of Chapter 8, Title 22, Code 1940.

Several grounds of the motion for a new trial take the point that the indictment charges no offense.

This case arose from the same facts and circumstances as Coshatt v. State, Ala. App., 69 So.2d 877.[1] The indictment in that case was identical to the one involved here, and we held in the Coshatt case that the indictment clearly, directly and expressly alleged the offense charged and was sufficient, and demurrer was properly overruled.

In this case defendant went to trial on the indictment without objection, by demurrer or otherwise. In the absence of appropriate and timely objection an indictment, even if it is subject to demurrable defects, not being void, is sufficient to sustain a judgment of conviction. Seals v. State, 239 Ala. 5, 194 So. 682. The indictment was not void, and these grounds of the motion for a new trial were properly overruled.

The evidence for the State tended to show that on October 10, 1952, J. W. Jones, a Birmingham City detective, went to the Swap Shop in Dolomite and was there shown into an adjoining room where defendant and Thomas Coshatt were already present. Mr. Jones, representing himself to be interested in purchasing narcotics, talked to Coshatt about buying the drugs which were in the room and in plain view

of defendant. Jones' conversation was all with Coshatt, but although appellant took no part in the discussion, he was sitting only a few feet away and was within hearing distance. After the various bottles of drugs were exhibited Jones and Coshatt, in appellant's presence, agreed upon a price of $1250 for the lot. Thereupon Jones stated he would have to go to Bessemer to get the money. He and Coshatt took the drugs and left in an automobile. Coshatt was arrested on the trip and narcotics confiscated.

Mrs. Thomas Coshatt testified as a witness for the State. She stated that one of the boys that burglarized the drug store gave her husband the narcotics and the next day her husband took them to Milton Baughn in Dolomite in defendant's automobile and defendant was with him at the time.

Witness and the woman the defendant was living with had an arrangement to meet Coshatt and defendant that evening at the Blue Bird tourist court. Defendant appeared at the appointed time and told witness her husband had gone to "carry the stuff somewhere" and he was waiting for Coshatt to come back and hoped it was not a trick.

On cross-examination she testified she paid no attention to the package when they exchanged cars that morning and she wouldn't say "yes or no" whether the package was already in Dolomite, or whether they had changed it and taken it out of the car, or whether they came back and got it during the day.

The State also introduced evidence to the effect that the bottles, which were in evidence, contained various types of narcotic drugs, including morphine and morphine derivatives. Proof was made that these were the drugs which were stolen from a Birmingham drug store, identification being established by the cost mark on each bottle in the handwriting of the pharmacist testifying.

The defendant testified he made his living from charity by selling pencils on

the streets. He stated that his common-law wife and Mrs. Coshatt took Coshatt's car to get a dog and arranged to meet defendant at the Blue Bird that afternoon. During the day defendant and Coshatt rode around in defendant's automobile, with Coshatt driving. They first went to Birmingham to a place called the Butterfly and came back by a place where a pool room had been. Coshatt got out of the car and went into a relative's house and when he came back outside he said he had a phone call to go to Dolomite on an errand. Defendant and Coshatt drove to the Swap Shop or Trading Post as it was sometimes called, and Coshatt insisted that defendant go inside with him for a few minutes. Defendant stopped to roll up the car windows and when he entered the shop the owner and Coshatt were talking. Defendant sat in a chair several feet away and took no part in the conversation between Coshatt and the detective, because he knew nothing about their business. The owner of the shop got out the box and opened it. They poured the stuff out on the bench and detective Jones looked at it and they reached an agreement. Then the man that ran the place took the box under his arm and they walked to the car. Coshatt and the detective got in the car and drove away and defendant drove to the Blue Bird. Defendant insisted he had nothing to do with the drugs, did not buy or handle any of them and never had possession of them. He testified that as far as he knew the drugs were already in the shop when he went there.

Defendant admitted on cross-examination that he was convicted of burglary and grand larceny in 1927; convicted of robbery in 1931, and for attempting to burglarize a dwelling in 1946.

Linda McDonald testified she was living with defendant as his common-law wife. She and defendant had arranged to meet the Coshatts at the Blue Bird at eleven o'clock so the women could go after the dog, but when they reached the place the Coshatts had not arrived. Coshatt telephoned defendant to meet him at the Trading Post in Dolomite. When they drove to the Trading Post Coshatt asked them to follow him to the place where his wife was waiting, so that the women could take his car and defendant and Coshatt would use defendant's car. The witness stated she was in the presence of defendant and Coshatt at all times and Coshatt never at any time took a sack or box from his car and put it in defendant's automobile. She insisted she knew defendant did not have anything to do with bootlegging dope.

This witness admitted on cross-examination that she had been convicted on charges of vagrancy in 1949 in Louisville, Kentucky; in Mobile in 1950, and in Grand Rapids, Michigan, in 1951.

Section 255 of Title 22, Chapter 8, Code 1940 provides that the possession of the drugs specified therein is illegal, unless such possession is in accordance with the provisions of said Chapter 8.

We are of the opinion that the evidence presented was sufficient to warrant a conviction for the unlawful possession of narcotic drugs, and there was no error in overruling the motion for a new trial on the grounds of the insufficiency of the evidence to sustain the conviction.

The judgment of the trial court is affirmed.

Affirmed.